# James A. Murphy, T. J. Hamilton and F. J. Oesterling, now for use of James A. Murphy and Thos. J. Hamilton *v.* Samuel L. Marshell, Appellant.

·[Marked to be reported.]

*Landlord and tenant—Lease—Distress—Eviction.*

A lease provided that the lessors might enter upon the premises at any time during the term for the purpose of putting up a " to let " or " for sale " sign; and further, that if at any time the tenant should attempt to remove his goods without having paid the rent due, the lessors might stop such removal by distraint. It also contained a warrant of attorney to confess judgment in ejectment and for the amount of rent due. Early in the morning of July 1, when a monthly instalment of rent, payable in advance for that month, was due, and the tenant was also in arrears for the rent of the two next preceding months, he began to remove his goods, when they were distrained. · The officer who made the distraint kept them upon the premises until the day of sale, changing the locks on the doors. The same day a " to let " sign was placed on the building. Subsequently judgment in ejectment for the premises and for the amount of rent due was entered by virtue of the power of attorney in the lease, and a writ of habere facias and a fi. fa. were issued. On July 16, the sheriff delivered possession to the lessors under the writ of habere facias. Upon a petition to open the judgment, defendant alleged, inter alia, that he did not owe for the July rent included in the judgment, because the lessors had taken possession of the premises on July 1, putting up a " to let " sign, and changing the locks on the doors, thus excluding him from possession, and that the sheriff had delivered possession to the lessors by virtue of the writ of habere facias on July 16. There was no evidence that the officer making the distress excluded the lessee from possession, or that he did more than was necessary in protecting the goods under the landlord's warrant. *Held,* (1) that the levy under the landlord's warrant was not an eviction and did not suspend liability for rent; (2) that the changing of the locks on the doors by the officer who executed the warrant did not prejudice the landlords' right under the contract; (3) that the entering for the purpose of placing a ·· to let " sign on the building was not an eviction, inasmuch as it was authorized by the lease; (4) that the lessors were entitled to the rent for the month of July.

*Landlord and tenant—Waiver—Estoppel—Delay in giving possession of the building.*

Where a tenant has regularly paid twenty-five separate months' rent without complaining that the premises were not completed and delivered to him the first month of the term as provided by the lease, he cannot thereafter set up such claim as a defense to the payment of rent.

Argued Nov. 5, 1896. Appeal, No. 175, Oct. T., 1896, by defendant, from order of C. P. No. 2, Allegheny Co., July T., 1896, No. 831, discharging rule to open judgment. Before STER-RETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to open judgment. Before WHITE, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order discharging rule to open judgment.

*F. C. McGirr,* of *Marron & McGirr,* with him *D. F. Patterson* and *John Marron,* for appellant, cited, Tiley v. Moyers, 43 Pa. 404.

*J. S. Ferguson,* with him *E. G. Ferguson* for appellees.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

On February 12, 1894, plaintiffs leased to defendant a five story brick building on Penn avenue in the city of Pittsburg for a term of five years, and on the 7th day of November, 1894, a large building in the rear of the one first leased for the term of four years and four months. Defendant went into possession and occupied the buildings as a retail grocery store up until 1st of July, 1896. The rent of the first property was $70,000 for the five years, payable monthly in advance; the lessee, among other covenants, agreed to pay all water taxes; it was further agreed that if he should at any time attempt to remove any of his goods without having paid the total rent and water taxes reserved, the lessors should have the right to stop the removal by landlord's warrant and distraint. In case of violation of any of the terms of the lease, there was given to the lessors a power of attorney to confess judgment in an amicable action of ejectment for the premises, also judgment for the amount due according to the terms of the lease, and on ten days' notice to the lessee, issue habere facias possessionem with fi. fa. for amount of judgment and costs, with attorney's commission, without first obtaining leave of court. On the 1st day of July, 1896, a monthly instalment of rent payable in advance for that month was due; besides, the lessee was in default for rent of the immediately preceding months of June and May,

the whole amounting to $3,702.90. Before daylight of that morning, lessee commenced removing his goods from the premises, and by the middle of the day, a large portion of the stock had been packed up, carted away and delivered to others to whom he alleged he was indebted. At that hour a considerable quantity of the goods yet remained on the leased premises; then learning of lessee's removal, plaintiffs took out a landlord's warrant and distrained them for rent in arrears; the sale on this warrant realized $1,539.60. On July 3, the lessors, averring violation of the contract, confessed judgment in ejectment against lessee for the premises, by virtue of the warrant of attorney, and also judgment for amount of rent alleged to be unpaid, $3,702.90, which included all the rent for May and June past due, and that for July payable in advance, also a balance of water tax and attorney's commissions. On the same day, as stipulated for in the lease, notice was given lessee of the entry of the judgment, and that writs of habere facias and fi. fa. would be issued at expiration of ten days, which writs were accordingly issued on 16th of July following. On July 25, 1896, Marshell presented his petition to the common pleas, praying that the judgment be opened, and he let into a defense, averring: 1. That he owed nothing for water tax, and the July rent of $1,166.66, included in the judgment, was not payable because the lessors had taken possession of the premises on July 1, and had immediately put up a "to let" sign on the building, and changed the locks on the doors, thus excluding him from the possession. 2. That on July 16, by virtue of the habere facias, the sheriff had delivered to lessors the possession. 3. That he was entitled to a credit of $1,539.60, amount realized from the distraint. 4. That he was entitled to a deduction for one month's rent, because possession had not been delivered him for more than a month after commencement of the term specified in the lease. On these averments the court granted a rule to show cause why judgment should not be opened. Considerable evidence was taken; the court discharged the rule as to all except the water tax for 1896, $246.75, for which the lessors entered a credit. From this decree the lessee now appeals, assigning for error the refusal of the court to open the judgment. The main contention is as to the rent payable in advance for July.

If it had appeared that the landlords had taken possession on July 1, because the tenant was in default, and had excluded him therefrom, and put up a " to let" sign on the building, that would have been such an unequivocal assertion of his right to possession and denial of the tenant's right as constituted an eviction and suspension of the rent. But there was evidence tending to show an entirely different state of facts. The rent was due on July 1, and the right to distrain therefor on that day followed as a consequence. The officer making the distraint levied on all the goods remaining in the building; he was not bound to remove them, but could for the purpose of safety keep them there until appraisement and sale: for that purpose, to a certain extent, necessarily, he was in possession of the premises, as the custodian of the goods. Further than this, there is no evidence that he excluded the tenant from the possession. Marshell himself, while denying any intention to defeat the landlord's collection of rent, admits part of the goods were packed up the night of June 30 with a view to removing them, and that he intended to abandon the possession on July 1, and to that end commenced early in that morning to cart them away ; that the levy on the landlords' warrant prevented the removal of those seized. His possession, in a reasonable view of his own testimony, was not disturbed except to the extent the execution of the warrant disturbed it. This was in no sense an eviction, and could not therefore suspend liability for rent. If the landlords had received rent for the month of July, or had resumed possession and excluded the tenant, it might well be argued the tenant was relieved from payment, for it would be inequitable to permit the exaction of a double rent. But the weight of the evidence shows the contrary; the tenant evidently sought to abandon the building on July 1, and remove his goods from the reach of the landlords' warrant. On July 16 they took possession of their abandoned building in the manner stipulated in the contract, and it remained vacant so far as concerns payment of any rent by others for the whole of that month. Then why should not the tenant pay, when the contract so stipulated and the landlords demand it? It is argued, the landlords, immediately after July 1 put up a "to let" sign on the building, which implies a resumption of possession by them ; but the contract expressly stipulates as follows : " The said les-

sors hereby reserve the right to enter upon the said premises for the purpose of putting up and maintaining a 'to let' or 'for sale' sign thereon, and to put up the same at any time during the term." As without any violation of the agreement this could have been done while the tenant was in actual possession, it certainly could be done after he had abandoned the premises. In fact, it is possible the tenant might have had some grounds of complaint if the landlords had not made proper effort to secure an occupant. As to changing the locks of the doors, that was done by the constable who executed the distress, and who had no keys to the old locks. His conduct, in the performance of his duty, cannot prejudice the landlords' right under the contract.

As to the complaint made, that the $1,539.60 realized on the distress warrant was included in the judgment, the appellant is not injured, for it is admitted it was entered as a credit on the execution issued on the judgment. As to the deduction claimed because the building was not completed and delivered to appellant the first month of the term, as provided in his contract, he paid regularly twenty-five separate months' rent thereafter without complaint, and took for each a written receipt in full, without demand for abatement. After twenty-five distinct opportunities for the assertion of this credit, and yet no word uttered, if even the claim had been well founded in the beginning, it ought to now be presumed he waived it.

We see no error in the decree; it is therefore affirmed.