616 A.2d 193

**WHITECO METROCOM, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1992.

Decided Oct. 14, 1992.

Petition for Allowance of Appeal Denied March 3, 1993.

156

Lawrence R. Wieder, for petitioner.

Thomas R. Haist, Asst. Counsel, for respondent.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Whiteco Metrocom (Petitioner) appeals from an order of the Secretary of the Department of Transportation (DOT) which denied Petitioner's exceptions to the proposed report of a DOT hearing officer, and finalized the hearing officer's order affirming the revocation of outdoor advertising device permits (device permits) for two outdoor advertising signs (signs) owned by Petitioner. We affirm.

Petitioner is the owner of signs located within 660 feet of and adjacent to Interstate 83 in Dauphin County, Pennsylvania. The two signs which are the subject of this dispute, signs

8–7658 and 8–7659, were erected in 1972 and 1975, respectively, without device permits. The Outdoor Advertising Control Act of 1971 (Act), Act of December 15, 1971, P.L. 596, *as amended,* 36 P.S. §§ 2718.101–2718.115, requires device permits for signs which are located within 660 feet of an interstate, and which are visible from the main-traveled way of an interstate. The Act also mandates that no two sign structures shall be spaced less than 500 feet apart.

In 1987, Petitioner applied for vegetation control permits from DOT for signs 8–7658 and 8–7659.[1] However, Petitioner was informed by DOT that until device permits were acquired for the two signs, no vegetation control permits would be issued. Petitioner consequently applied for device permits for signs 8–7658 and 8–7659, which were issued to Petitioner in October of 1987. Thereafter, DOT considered Petitioner's vegetation control applications.

While considering the vegetation control applications, DOT took measurements of signs 8–7658 and 8–7659 and determined that they were within 500 feet of two other signs which had previously been permitted to Petitioner at device permit numbers 8–4117 and 8–4115.[2] Based upon these spacing violations, the Department, by letter dated November 21, 1988, revoked the device permits for signs 8–7658 and 8–7659.

Petitioner appealed the revocation and a hearing was conducted on June 6, 1990 before a DOT hearing officer. The hearing officer issued a proposed report, determining that sign 8–7658 was erected subsequent to the effective date of the Act, that the East faces of sign 8–7658 and the upper face of sign 8–7659 were visible from the interstate,[3] that signs 8–7658 and 8–7659 were within 660 feet of the interstate, and

1. Petitioner applied for vegetation control permits under the Highway Vegetation Control Act, Act of December 20, 1983, P.L. 293, *as amended,* 36 P.S. §§ 2720.1–2720.12.

2. Petitioner's permit application for signs 8–7658 and 8–7659 indicated that the subject signs were not within 500 feet of any other signs.

3. Sign 8–7658 is 560 feet from the edge of Interstate 83 with four sign faces, two on each side, one side facing East and the other side facing West. Sign 8–7659 is less than 560 feet from the edge of Interstate 83 with two sign faces stacked one above the other facing East.

that both signs (the East faces of sign 8–7658 and the upper face of 8–7659) were, therefore, controlled by the Act.[4] The hearing officer further determined that signs 8–7658 (East faces) and 8–7659 (upper face) were within 500 feet of another sign in violation of section 5(c)(2)(i) of the Act, 36 P.S. § 2718.-105(c)(2)(i), and therefore affirmed DOT's revocation of the device permits. Petitioner filed exceptions to the proposed report.

On October 15, 1991, the Secretary of Transportation denied Petitioner's exceptions and finalized the hearing officer's order affirming the revocation of Petitioner's device permits for the East faces of sign 8–7658 and the upper face of sign 8–7659. Petitioner timely appealed to this court.

■ Petitioner raises the following issues: 1) whether DOT is estopped from revoking the device permits, 2) whether sign 8–7658 is "grandfathered" and therefore not controlled by the Act, and 3) whether substantial evidence supports the finding that the East faces of sign 8–7658 and the upper face of sign 8–7659 are visible from Interstate 83, and therefore controlled by the Act. Our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error of law was committed, or whether necessary findings of fact are not supported by substantial evidence. *Miller's Smorgasbord v. Department of Transportation,* 139 Pa. Cmwlth.Ct. 385, 590 A.2d 854 (1991).

■ As to the first issue, whether DOT is estopped from revoking the device permits, estoppel arises when a party intentionally or negligently misrepresents a material fact, knowing or having cause to know that another will rely on the misrepresentation, and that the other justifiably relies upon the misrepresentation to his detriment. *Police Pension Fund Association Board v. Hess,* 127 Pa.Cmwlth.Ct. 498, 562 A.2d 391, *petition for allowance of appeal denied,* 524 Pa. 614, 569 A.2d 1371 (1989). The elements of estoppel must be proven

---

4. The West faces of sign 8–7658 and the bottom face of sign 8–7659 are not visible from the interstate and are, therefore, not controlled by the Act.

by clear and convincing evidence, with the critical elements being misrepresentation and justifiable reliance. *Id.*

 Petitioner argues that at the time signs 8–7568 and 8–7659 were erected, employees of DOT, including former DOT employee Ronald Kline, represented to Petitioner's operations manager, Charles Witmer, that device permits were not needed for signs 8–7658 and 8–7659. Ronald Kline was the only DOT employee who allegedly represented to Charles Witmer that device permits were not needed that testified. Ronald Kline testified that he could not recall having a conversation with Charles Witmer in which he told Charles Witmer that device permits were not needed for signs 8–7658 and 8–7659. Moreover, the hearing officer found Charles Witmer's testimony regarding the purported conversation with Ronald Kline not credible.[5] In addition, there is no evidence to suggest that even if conversations between DOT representatives and Charles Witmer regarding device permits took place, that they took place *before* the two signs were erected. Therefore, because there is no competent evidence in the record that a misrepresentation occurred upon which Petitioner allegedly relied in erecting its signs without device permits, the doctrine of equitable estoppel cannot apply.

 As to the second issue, whether sign 8–7658 is grandfathered and therefore not controlled by the Act, Petitioner argues that DOT is barred from revoking the device permit for sign 8–7658 pursuant to a grandfather clause in federal regulation 23 C.F.R. § 750.707.[6] The grandfather clause to which Petitioner refers in 23 C.F.R. § 750.707 states as follows:

> (d) Maintenance and Continuance. In order to maintain and continue a non-conforming sign, the following conditions apply:

---

**5.** Matters of credibility and evidentiary weight are within the exclusive discretion of the factfinder below, and are not within our scope of review. *Hartman v. State Board of Optometrical Board of Examiners*, 71 Pa.Cmwlth.Ct. 110, 454 A.2d 1150 (1983).

**6.** Title 23 contains the federal regulations relating to the control of United States highways.

(1) The sign must have been actually in existence at the time the applicable State law or regulations became effective as distinguished from a contemplated use such as a lease or agreement with the property owner. There are two exceptions to actual existence as follows:

(i) Where a permit or similar specific State governmental action was granted for the construction of a sign prior to the effective date of the State law or regulations and the sign owner acted in good faith and expended sums in reliance thereon. . . .

23 C.F.R. § 750.707(d)(1)(i).

In the present case, the applicable State law, the Act, became effective on December 15, 1971. Petitioner argues that although sign 8–7658 was not actually in existence on December 15, 1971, the sign is grandfathered under section 750.707(d)(1)(i) because the alleged representations from DOT regarding the need for device permits constituted specific state governmental action upon which Petitioner relied in erecting sign 8–7658 on January 1, 1972 without a device permit. However, because we have determined that no competent evidence was produced to show that DOT actually made these alleged representations, or that the alleged representations were made before the effective date of the Act or before sign 8–7658 was erected, Petitioner's argument is without merit.

■ Petitioner also argues that sign 8–7658 is grandfathered under an agreement between DOT and the Federal Highway Administration (agreement) entered into in order to carry out national policy relative to control of outdoor advertising in areas adjacent to the national system of interstate highways, defense highways, and the federal-aid primary system. Under federal regulations the Commonwealth was required to, by law or regulation, set standards for size, lighting and spacing of outdoor advertising signs in conformity with the agreement. 23 C.F.R. § 750.705. The pertinent section of the agreement states:

The standards herein contained pertaining to the size, spacing and lighting of signs permitted in zoned and

unzoned commercial or industrial areas shall apply only to those signs erected subsequent to the effective date of this agreement ...

Section III(B)(1)(c) of the agreement at R.R. 185a. (The standards pertaining to size, spacing and lighting in the agreement are the same as those contained in the Act).

Petitioner argues that this provision of the agreement provides for the grandfathering of signs that were erected prior to the effective date of the agreement. Petitioner argues that the effective date of the agreement is the date on which the agreement was signed, January 6, 1972, and that sign 8–7658 is grandfathered because it was erected on January 1, 1972. However, the agreement contains an express provision that the effective date of the agreement is December 15, 1971, the same date as the effective date of the Act. Therefore, this argument is also without merit.

As to the third issue, whether substantial evidence supports the finding that the East faces of sign 8–7658 and the upper face of sign 8–7659 are visible from Interstate 83 and therefore controlled by the Act, substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the findings of the factfinder. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Cmwlth.Ct. 277, 572 A.2d 838 (1990), *aff'd*, 531 Pa. 287, 612 A.2d 434 (1992).

Petitioner argues that substantial evidence does not support the hearing officer's finding that signs 8–7658 (East faces) and 8–7659 (upper face) are visible from Interstate 83 because the photographs of the two signs introduced into evidence by DOT were not taken from a driver's perspective, and gave no consideration to time and line of sight. Petitioner contends that from a driver's perspective, the upper face of sign 8–7659 and the East faces of sign 8–7658 are only visible for an instant because they are obscured by a steel structure resting on the concrete medial barrier of Interstate 83. Petitioner further contends that sign 8–7659 partially blocks sign 8–7658. Petitioner, therefore, argues that signs 8–7658 and 8–7659 are

not controlled by the Act because they are not visible from Interstate 83.

Visible is defined in the Act as "capable of being seen (whether or not legible) without visual aid by a person of normal visual acuity." Section 3(10) of the Act, 36 P.S. § 2718.103(10). In the present case, Douglas W. Lehr, right-of-way administrator for DOT, testified that he has traveled both northbound and southbound on Interstate 83 and that the upper face of sign 8–7659 and the East faces of sign 8–7658:

> are visible as you travel on the main traveled way of I–83 southbound and they are more clearly visible for longer— they're clearly visible in both directions but they're visible for a longer period of time traveling in a northbound main traveled way.

Transcript of Hearing before DOT Hearing Officer on June 6, 1990 at 17.

Moreover, the photograph introduced by DOT which was taken from the main-traveled way of Interstate 83 shows that the upper face of sign 8–7659 and the East faces of 8–7658 are visible from the main-traveled way of Interstate 83. The testimony of Douglas W. Lehr and the photograph introduced into evidence constitute substantial evidence to support the finding of the hearing officer that the upper face of sign 8–7659 and the East faces of 8–7658 are visible from the main-traveled way of Interstate 83, and are therefore controlled by the Act.

Accordingly, the order of the Secretary of DOT denying Petitioner's exceptions and finalizing the hearing officer's proposed report is affirmed.

## ORDER

AND NOW, October 14, 1992, the order of the Secretary of the Department of Transportation in the above-captioned matter is affirmed.