662 A.2d 1092

**HOMART DEVELOPMENT CO., Appellee,**

v.

**Thomas SGRENCI t/a TG's Deli, Appellant.**

Superior Court of Pennsylvania.

Argued May 10, 1995.

Filed July 14, 1995.

Karen L. Saraco, Langhorne, for appellant.

Daniel J. Dugan, Philadelphia, for appellee.

Before ROWLEY, P.J., and WIEAND, McEWEN, CIRILLO, DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT and SAYLOR, JJ.

McEWEN, Judge.

This appeal, taken from an order which dismissed the petitions to open a judgment for money as well as a judgment for possession, both confessed against appellant Thomas Sgrenci by appellee Homart Development Co., pursuant to the terms of a commercial lease, requires that we decide [1] whether the trial court erred in concluding that appellant had not presented sufficient evidence to create a jury question as to whether the terms of the lease had been breached by appellee. Appellee, however, contends that, even if we find that sufficient credible evidence was produced to create a jury question, appellant is not entitled to any relief as his signature on the tenant estoppel certificate precludes any relief based upon conduct occurring prior to December of 1990. Our study compels the conclusion that both the money judgment entered for all future rents due under the ten-year lease and the judgment for possession of the leased premises [2] must be opened so as to enable litigation of the issue of which party breached the lease, as well as a determination of the amount of damages resulting therefrom. We, therefore, reverse and remand.

Appellant became a commercial tenant of the Neshaminy Mall in December of 1985 pursuant to an assignment of a ten-

---

1. The issues, as framed in the brief submitted by appellant, are:
   a. Did Homart breach the lease because it violated Sgrenci's exclusive right to sell delicatessen food items?
   b. Did Homart breach the lease because other vendors in the food court were operating "delicatessens" in violation of the lease?
   c. Were Sgrenci's defenses based on principles of estoppel and waiver meritorious so as to require that judgment be opened?
   c. Would the parol evidence rule bar the introduction of Sgrenci's meritorious defenses?

2. The record suggests that appellee is currently in possession of the leased premises pursuant to the confessed judgment for possession.

year lease entered into in July of 1983 between Donuts Galore and the owner of the Neshaminy Mall. Thereafter, in 1989, appellant, who operated a donut shop in the 945 sq. ft. leased space, was approached by the management of the mall, and asked to consider becoming a part of a planned "Food Court". Negotiations [3] between the parties resulted in appellant termi-

3. Appellant alleged in his answer to the complaint in confession of judgment that the following dealings occurred between the parties during 1988 and 1989:

7. In or about 1988, plaintiff's predecessor in title desired to alter the configuration of the stores within its shopping center so as to create a centralized "Food Court".

8. Plaintiffs' predecessor in title approached defendant for the purpose of terminating the lease between plaintiff and defendant and incorporating defendant's business in the Food Court.

9. During the course of negotiations between plaintiff and defendant, plaintiff created certain revenue projections for defendant and based the defendant's proposed monthly rental upon those projections.

10. On March 16, 1989, defendant agreed to terminate his lease with landlord in exchange for certain considerations including the granting to plaintiff of the first option on "choice of location" within the newly created Food Court as well as first option of "menu" to be granted exclusively to defendant, all of which was incorporated into the lease executed on that same date.

11. Defendant expended large sums of money in an effort to prepare the newly demised premises for its opening on June 9, 1989.

12. Upon opening in June, 1989, defendant did meet or exceed his gross revenue projections for approximately three (3) months.

13. In or about the fall of 1989, landlord began leasing other space within the newly created Food Court to entities serving menus in direct competition with defendant and in violation of the lease with defendant.

14. As a result of the breach of the lease with defendant as aforesaid, defendant's monthly revenues and receipts declined substantially. Between approximately September 1989 and March 1991, defendant continued to pay monthly rental payments in accordance with the lease agreement.

15. Defendant believes and therefore avers that in November of 1991, plaintiff's predecessor transferred its interest in the shopping center known as the Neshaminy Mall to plaintiff.

16. Plaintiff Homart Development Co. notified defendant of the restructuring and transfer and requested an estoppel certificate from defendant.

17. In or about December 1991, defendant notified plaintiff of the breaches to the lease agreement as occasioned by plaintiff's predecessor. Defendant refused to execute the estoppel certificate as requested by plaintiff.

nating his prior lease and entering into a new 10–year lease on March 16, 1989, which provided, *inter alia:*

**ARTICLE 1. BASIC LEASE PROVISIONS AND CERTAIN DEFINED TERMS**

1.1  Date of Lease:  March 16, 1989

1.2  "Landlord": U.S. 1 AND BRISTOL ROAD ASSOCIATES

1.3  Address of Landlord:

c/o Strouse, Greenberg & Co., Inc.
1626 Locust Street
Philadelphia, Pennsylvania
29204

1.4  "Tenant": THOMAS SGRENCI

\*    \*    \*    \*    \*    \*

1.6  Tenant's Trade Name:  "TG'S DELI"

1.7  "Demised Premises":  Food court space FC–9, consisting of approximately 730 square feet.

\*    \*    \*    \*    \*    \*

A delicatessen for the retail sale of the following items in prepared form for on and off premises consumption (i) the following sandwiches: corned beef; pastrami; beef brisket; roast beef, turkey; ham; swiss; tuna salad; chicken salad; egg salad; American cheese, seafood salad and Reuben; (ii) hoagies; (iii) the following cold platters: tuna salad; fruit and cottage cheese; (iv) the following hot platters: beef brisket; turkey breast; corned beef; hot pastrami; hot ham; and macaroni and cheese; (v) soups; and as incidental thereto the sale of the following in prepared form for on and off premises consumption: (a) the following side dishes: potato pancakes; cheese blintzes; cole slaw; potato salad;

18.  In March of 1991, with the agreement and acquiescence of plaintiff, defendant continued making lease payments to plaintiff at the rate of 6% of defendant's gross monthly receipts.

19.  Defendant is in compliance with the covenants and conditions of the lease agreement with plaintiff.

20.  Plaintiff is not in compliance with the covenants and conditions of the lease agreement and has breached the lease agreement for the reasons aforesaid.

macaroni salad; french fries; onion rings; pasta salad; orange juice; sauerkraut and "vegetable of the day"; (b) the following breakfast items: muffins, bagels, danish and hard roll with butter or cheese; (c) the following non-alcoholic beverages: coffee; tea; lemonade; hot chocolate and plain carbonated sodas; and (3) the following desserts: cheesecake; donuts; danish; brownies; cookies; fudge and chocolate. **Except for the items specifically set forth above, Tenant shall not sell any other foods or beverages. Without enlarging upon what Tenant may sell it is specifically understood that Tenant shall not sell:** any form of hot dog except that Tenant may sell Kosher hot dogs only; sausage; chili; ice cream; yogurt; oriental food; pizza; Italian food; cinnamon buns; hamburgers; fried chicken; and fruit drinks other than lemonade; orange juice and soda such as grape or cherry soda. [emphasis supplied] **Landlord agrees that so long as Tenant remains in good standing pursuant to the terms of this Lease and as long as the Food Court (as defined in Rider Section # 4) shall not be altered substantially in size or configuration, that it shall not lease any space in the Food Court to a "Delicatessen" or "Delicatessen Operation". As used in the immediately preceding sentence, the terms "Delicatessen" or "Delicatessen Operation" shall be construed to mean an operation that specializes in the preparation and sale of cooked meats, salads and sandwiches which are typically offered in Jewish, Italian and other European type delicatessens.**

\* \* \* \* \* \*

### ARTICLE 26. REMEDIES

26.1

A. . . . .

B. Tenant agrees and it is hereby made a condition of this Lease that if Tenant shall fail or omit to pay rent, additional rent, or charges herein reserved as rent, on the days and at the place where the same are made payable (after written notice as hereinbefore provided), or if Ten-

ant shall fail in the performance and/or observance of any of the other covenants, conditions, terms and agreements of this Lease, after written notice (for such defaults as require notice as hereinbefore provided); or if any other default shall occur....:

(1) **This Lease shall at the option of the Landlord cease and determine,** without any right on the part of Tenant to save the forfeiture by payment of the rent due or other performance of the conditions, terms, or covenants thus violated, **and Landlord shall at once become entitled to receive from Tenant damages which shall be equal to the difference between the aggregate rentals reserved under the terms of this Lease for the balance of the term, less an adjustment for interest at the legal rate, and the fair rental value of the demised premises for that period determined as of the date of such termination.**

(2) **Without terminating the Lease, Landlord may re-enter and repossess the Demised Premised,** breaking open locked doors, if necessary, and may use as much force as necessary to effect entrance without being liable to any action or prosecution for such entry or the manner thereof, nor shall Landlord be liable for the loss of any property upon the premises. **Landlord may thereupon lease the Demised Premises to any other person upon such terms as Landlord shall deem reasonable** entirely at Landlord's discretion and for a term within or beyond the term of this Lease **and Tenant shall remain liable for any loss in rent for the balance of the then current term together with any expenses or costs incurred by Landlord in re-renting the premises,** such as the payment of commissions, the making of alterations, or otherwise.

\* \* \* \* \* \*

26.6 **On the occurrence of any of the foregoing acts of default** (and after notice as hereinbefore provided) **Tenant agrees that the whole rent for the balance of the term and all other sums payable hereunder as rent for the**

**balance of the term,** or any part thereof at the option of the Landlord, **shall immediately** without act or further notice **become due and payable** as if by the terms of this Lease the same were payable in advance, and Landlord may immediately proceed to distrain, collect, or bring action for the said whole rent or such part thereof as aforesaid, as rent being in arrears, or may enter judgment therefor in an amicable action as herein elsewhere provided for in case of rent in arrears, or may file a proof of claim in any bankruptcy or insolvency proceedings for such rent, or Landlord may institute any other proceedings whether similar to the foregoing or not, to enforce payment thereof.

26.7   For the purpose hereof, the rent for the balance of the term as used herein shall be deemed to be the **aggregate of the fixed annual minimum rent payable at the time of such default or breach by Tenant, plus the annual average of the percentage rent theretofore paid or payable by Tenant for the three (3) years last preceding such breach or default,** or if three (3) years of the term hereof have not then elapsed, then the average of the annual percentage rent theretofore paid or payable by the Tenant.

26.8   In the event of any default by Tenant either in the payments of rent or any other charge herein reserved, or in the performance of any of the terms, conditions, promises and covenants herein set forth, either during the original term of this Lease, or any extension thereof, **Tenant hereby empowers any Prothonotary or attorney of any Court of Record to appear for Tenant in any and all actions which may be brought for rent or the charges, payments, costs and expenses reserved as rent,** or agreed to be paid by Tenant and/or to sign for Tenant an agreement for entering in any competent Court an amicable action or actions for the recovery of rent or other charges or expenses, and in said suits or in said amicable action or **actions to confess judgment against Tenant for all or any part of the rent specified in this Lease and then unpaid including, at Landlord's option, the rent for the entire unexpired balance of the term of this Lease,**

computed as aforesaid, and other charges, payments, cost and expense reserved as rent or agreed to be paid by Tenant, and for interest and costs together with an attorney's commission of five (5) per cent. Such authority shall not be exhausted by one exercise thereof, but judgment may be confessed as aforesaid from time to time and as often as any of said rent or other charges reserved as rent shall fall due or be in arrears, and such powers may be exercised as well after the expiration of the original term and/or during any extension or renewal of this Lease and after the expiration thereof at any time.

\*　　\*　　\*　　\*　　\*　　\*

26.10　In any amicable action of ejectment or for rent in arrears, Landlord shall first cause to be filed in such action an affidavit made by it or someone acting for it setting forth the facts necessary to authorize the entry of judgment, of which facts such affidavit shall be conclusive evidence, and if a true copy of this Lease be filed in such action, it shall not be necessary to file the original as a warrant of attorney, any rule of Court, custom or practice to the contrary notwithstanding.

\*　　\*　　\*　　\*　　\*　　\*

26.12　All of the remedies hereinbefore given to Landlord and all rights and remedies given to Landlord by law, shall be cumulative and concurrent. No determination of this Lease or the taking or recovering of the Demised Premises shall deprive Landlord of any of its remedies or actions against Tenant for rent due at the time or which, under the terms hereof, would in the future become due as if there had been no determination, or for sums due at the time or which, under the terms hereof, would in the future become due as if there had been no determination, nor shall the bringing of any action for rent or breach of covenant, or the resort to any other remedy herein provided for the recovery of

rent be construed as a waiver of the right to obtain possession of the premises.

\*    \*    \*    \*    \*    \*

## ARTICLE 27.  NO WAIVER

27.1  Failure of the Landlord to insist upon the strict performance of any provision or to exercise any option or any rules and regulations shall not be construed as a waiver for the future of any such provision, rule or option.  The receipt by Landlord of rent with knowledge of the breach of any provision of this lease shall not be deemed a waiver of such breach.  No provision of this lease shall be deemed to have been waived unless such waiver be in writing signed by the Landlord....

Appellee on August 31, 1992, confessed judgment against appellant in the amount of $261,822.90 which it computed as follows:

$ 14,455.14  Base rent and $2,538.35 in "other charges" for the period March 1, 1991, through July 1, 1992, although the "other charges", as admitted in the answer of appellee to paragraph 5(J) of the petition to open judgment filed by appellant, had been paid.[4]

$ 18,900.00  Accelerated rent from August 1, 1992, to March 31, 1993 at the rate of $2,362.50 per month.

$216,000.00  Accelerated rent from April 1, 1993, to March 31, 1999 at the rate of $3,000.00 per month.

$ 12,467.76  Attorneys fees.

Appellee also confessed judgment for possession of the premises.

Appellant in his petitions to open the judgments argued that *he* had not breached the lease but rather that appellee had breached the lease and rendered appellant's performance impossible, by leasing an adjacent area of the food court to a vendor with an almost identical menu, Bagel Builders, in

---

4.  Appellee's answer provided: "It is admitted that some or all of those items listed as additional rent and charges other than minimum rent may have been paid in part or in full at the time that the complaint in confession of judgment was recorded on August 31, 1992."

violation of the express terms of the lease and the understanding of the parties. Appellant alleged, *inter alia,* in his petition to open that:

Appellee had been properly notified of its breach of the terms of the lease;

Appellee had overcharged appellant on the "other charges" reserved as rent and had refused to provide an accounting of those charges;

The confessed judgment improperly included amounts already paid by appellant; and

Rents had been "wrongfully accelerated through the end of the lease term".

The trial court found that appellee had not breached the lease agreement since "although certain tenants may be selling *a few of the same items* that appear on defendant's menu, plaintiff has not leased any space to a delicatessen or a delicatessen operation. Nowhere in the 'Permitted Use' clause is [appellant] given the exclusive right to sell all the items enumerated. [Appellee] therefore has not breached the lease agreement." (emphasis supplied). Since we find sufficient evidence to support a finding by a jury that appellant was granted the exclusive right to sell the enumerated delicatessen style food items and find that there was sufficient evidence to raise a jury question as to whether Bagel Builders was specializing in the sale of foods typically sold by a delicatessen, we must reverse and remand.

■   A petition to open a confessed judgment is an appeal to the equitable powers of the court. It is well settled that in order to obtain relief,

a party must act promptly, allege a meritorious defense, and present sufficient evidence of that defense to require submission of the issues to a jury. *Bell Federal Savings & Loan Ass'n of Bellevue v. Laura Lanes, Inc.,* 291 Pa.Super. 395, 435 A.2d 1285 (1981); Pa.R.Civ.P. 2959. Although at one time it was further required that a party establish equitable considerations sufficient to impress the court with the need for relief, it is now held that equitable consider-

ations are no longer relevant unless related to a particular asserted defense. *Bell Federal Savings & Loan Ass'n of Bellevue v. Laura Lanes, Inc., supra; Kardos v. Morris,* 470 Pa. 337, 368 A.2d 657 (1977).

*West Chester Plaza Assoc. v. The Chester Engineers,* 319 Pa.Super. 196, 199, 465 A.2d 1297, 1298 (1983).

> This court has made it clear on prior occasions that, in addition to the petition to open, it is proper to also consider depositions, *Ecumenical Enterprises, Inc. v. NADCO Construction Company,* 253 Pa.Super. 386 fn. 4, 385 A.2d 392 fn. 4 (1978); *Kilgallen v. Kutna,* 226 Pa.Super. 323, 310 A.2d 396 (1973), additional testimony, *B.C.Y. Inc., Equipment Leasing v. Bukovich,* 257 Pa.Super. 121, 390 A.2d 276 (1978), as well as supplemental memorandae, *Silverman v. Polis,* 230 Pa.Super. 366, 326 A.2d 452 (1974), in assessing a meritorious defense.

*West Chester Plaza Assoc. v. The Chester Engineers, supra* at 202, 465 A.2d at 1300, *quoting Shainline v. Alberti Builders Inc.,* 266 Pa.Super. 129, 134 n. 1, 403 A.2d 577, 579 n. 1 (1979).

■ Appellant introduced substantial evidence in support of his assertion that he had been granted the exclusive right to sell the food items specifically enumerated in his lease and that appellee had breached those provisions of the lease by permitting Bagel Builders to offer identical sandwich selections for sale in direct competition with appellant. We are mindful that

> [i]n construing a contract "each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Marcinak v. Southeastern Greene School Dist.,* 375 Pa.Super. 486, 491, 544 A.2d 1025, 1027 (1988). In order to ascertain the intention of the parties, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organiza-*

*tion Masters, Mates and Pilots of America,* 497 Pa. 102, 109, 439 A.2d 621, 624 (1981) *(quoting Foulke v. Miller,* 381 Pa. 587, 593, 112 A.2d 124, 127 (1955)). The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement. *Metzger v. Clifford Realty Corporation,* 327 Pa.Super. 377, 385, 476 A.2d 1, 5 (1984).

*Wrenfield Homeowners Association v. DeYoung,* 410 Pa.Super. 621, 627, 600 A.2d 960, 963 (1991).

The express terms of the lease at issue prohibit appellant from selling any food item not specifically listed,[5] and appellant produced evidence to establish that when he introduced a salad bar to combat the competition from Bagel Builders, he was informed by appellee that salad could be sold only by the yogurt shop. Appellant testified that he had been approached in 1988 by an agent of Strouse Greenberg, the manager of the Mall, who asked appellant to consider terminating the lease which he had obtained by assignment in 1983 and becoming an operator of a food service in the proposed food court. Appellant testified that he was told that he could select the food service that he desired and choose a delicatessen. Appellant, in support of this testimony, produced a letter, dated September 15, 1988, written in response to the proposed menu he had been required to submit, which provided *inter alia:*

By and large this menu looks fine. I would like to reserve judgment however until we have fine tuned some of the other lessees' menus so that we minimize the possibility of overlap. The only areas that I could see we might have to modify at this time would be the dessert items as it is possible we would have a tenant specializing in the cooking and sale of brownies and cookies. I will keep you posted on this. I look forward to hearing from you in the near future.

Appellant also produced the following letter from the Strouse Greenberg agent, Ted DeSwart, dated February 8, 1989:

5. "Except for the items specifically set forth above tenant shall not sell any other foods or beverages."

Dear Gene and Tommy:

Further to our discussion on the possibility of our giving you some protection under the terms of your lease against another delicatessen operator coming into the mall, I would be prepared to propose to the owners that they consider a language along the following lines.

"Landlord agrees that so long as Tenant remains in good standing under the terms of this lease and so long as the Food Court is not altered substantially in size or configuration, that it will not lease to another Delicatessen or Delicatessen-type operation in this Food Court.

For the purposes of this clause the term 'Delicatessen Operations' shall be construed to mean an operation specializing in the preparation and sale of cooked meats, salads and sandwiches as typically offered in Jewish, Italian or other European type Delicatessens."

Please adjust this language to make yourselves feel comfortable and let me know what you think. I look forward to hearing from you.

Mr. DeSwart conceded in his deposition testimony that it had been necessary to induce appellant to participate in the proposed food court since:

... Mr. Sgrenci's location where the donut shop was a key location in as much [as] it was on a corner which was critical to the layout of the food court.... He was one of the first people we approached with the concept, and as such gave him his choice of operation.

R.R. at 256a.

Although appellee argues that the lease only *permits* appellant to sell the enumerated food items and does not provide an *exclusive right* to sell those items, we believe that the language of the lease, especially when viewed in conjunction with the evidence of the response of appellee to the sale of salad by appellant,[6] provides a sufficient basis to require submission of

6. We will assume for purposes of ruling upon the motion that the yogurt shop was operating under a lease similar to that of appellant since appellee has not suggested otherwise.

the issues to a jury. Thus, the petitions to open should have been granted.

Appellee, however, argues that even if there was sufficient evidence produced by appellant to require submission of the issues to a jury, the petitions to open should be dismissed since appellant is estopped from asserting the breach of the lease as a result of his execution of a tenant estoppel certificate [7] in November of 1990.

7. The tenant estoppel certificate provided:

> The undersigned, Thomas Sgrenci (Tenant), is the tenant under that certain Lease dated as of March 16, 1989 (the "Lease") by and between Tenant and U.S. 1 and Bristol Road Associates ("Landlord") with respect to property located at Neshaminy Mall, Bensalem, Pennsylvania (the "Shopping Center"). Tenant hereby ratifies the Lease and certifies to Buyer, as purchaser of a portion of the Shopping Center of which the premises ... is a part ... as follows:
>
> i. The term of the Lease has commenced and Tenant has unconditionally accepted the Premises.
>
> ii. Tenant hereby attorns to Buyer as its lessor, to be effective and self-operative without execution of any further instrument upon the conveyance of the Premises from its owner to Buyer, and at such time, will be bound to Buyer under all of the terms, covenants and conditions of the Lease for the balance of the term thereof and any extensions or renewals with the same force and effect as if Buyer were the Landlord under the Lease.
>
> iii. The current monthly installment of minimum rent under the lease is $2,362.50, the payment of which has commenced. No advance rental or other payment has been made in connection with the Lease.
>
> iv. A security deposit of $0 is being held by Landlord in connection with the Lease.
>
> v. The Lease is a valid Lease, is in full force and effect, and represents the entire agreement between the parties. There is no existing default on the part of Landlord or Tenant in any of the terms and conditions thereof and no event has occurred which, with the passing of time or giving of notice, or both, would constitute an event of default. Tenant has no offsets or credits against rent due or payable under the Lease. The Lease has not been amended, modified, supplemented, extended, renewed or assigned except as follows: None.
>
> Tenant has received no notice of any assignment of the Lease by Landlord.
>
> Tenant has received no rent concessions or other inducements to execute the Lease other than as set forth in the Lease.
>
> The current term of the Lease expires on March 31, 1999. The Lease contains no options to extend or renew the term thereof, or to expand the Premises, except as follows: None. Tenant does not have any

■

■ The doctrine of equitable estoppel prevents one party from acting differently than the manner in which it induced another party to reasonably expect. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 434–436, 457 A.2d 502, 503 (1983). The doctrine may be applied where the party asserting estoppel establishes by clear, precise and unequivocal evidence (1) that the party against whom the doctrine is sought to be asserted intentionally or negligently misrepresented a material fact, knowing or with reason to know that the other party would justifiably rely on the misrepresentation, (2) that the other party acted to his or her detriment by justifiably relying on the misrepresentation, and (3) that there was no duty of inquiry on the party seeking to assert estoppel. *Foster v. Westmoreland Casualty Co.,* 145 Pa.Cmwlth. 638, 643–645, 604 A.2d 1131, 1134 (1992); *Arasi v. Neema Medical Services,* 407 Pa.Super. 393, 400–401, 595 A.2d 1205, 1209 (1991), *allo. denied,* 529 Pa. 655, 604 A.2d 247 (1992).

> Mere argument or doubtful inference is insufficient to establish the critical element of changing one's position to his or her detriment. *Whiteco Metrocom v. Department of Transportation,* 151 Pa.Cmwlth. 154, 616 A.2d 193 (1992), *appeal denied,* 533 Pa. 647, 622 A.2d 1379 (1993); *Pennsylvania Liquor Control Board v. Venesky,* 101 Pa.Cmwlth. 456, 516 A.2d 445 (1986), *appeal denied,* 515 Pa. 590, 527 A.2d 549 (1987). Moreover, equitable estoppel "is [a doctrine] of fundamental fairness, and whether it is applicable is dependent upon the particular facts of each case." *Central Dau-*

option or preferential right to purchase all or any portion of the Premises or the Shopping Center.

Landlord has not rebated, reduced or waived any amounts due from Tenant under the Lease, either orally or in writing.

There are no actions, voluntary or involuntary, pending against Tenant under the bankruptcy laws of the United States or any state thereof and, to Tenant's knowledge, none are contemplated.

Tenant does not, has not and will not use or dispose of hazardous materials at the Shopping Center in violation of any environmental law, rule, regulation or ordinance at anytime applicable to the Shopping Center.

Tenant understands that Buyer and its lenders, partners and assigns may and will rely upon this Estoppel Certificate with respect to the matters set forth herein in determining whether to proceed with its contemplated acquisition of a portion of the Shopping Center.

*phin Sch. Dist. v. Department of Education,* 63 Pa.Cmwlth. 48, 55, 437 A.2d 527, 530 (1981).

*Quinn v. Commonwealth,* 168 Pa.Cmwlth. 447, 452, 650 A.2d 1182, 1184–1185 (1994).

■ Appellant testified that he did not understand the effect of the tenant estoppel certificate and signed it only as an accommodation to the Mall management which he believed was working to resolve his "menu overlap" problems in the fall of 1990, when he executed the certificate. Appellee has not alleged that it was unaware of the negotiations between Strouse Greenberg and appellant regarding menu overlap or that its lack of knowledge prejudiced it in any way. The issue of the effect of the certificate must, therefore, be resolved by the factfinder.

In light of our remand for proceedings on the respective claims of the parties, we find it necessary to address the existence of an independent basis requiring that appellant be granted relief from the money judgment confessed against him by appellee for accelerated rental payments.

It is a basic tenet of our system of civil justice that a plaintiff may not obtain a double recovery for a single wrong and yet that is precisely what the appellee proceeded to obtain via the two judgments entered by confession in this case. This Court, more than 60 years ago, in *Greco v. Woodlawn Furniture Co.,* 99 Pa.Super. 290 (1930), condemned the precise practice which appellee followed in the instant case. The *Greco* Court held that a petition to open a judgment confessed upon a commercial lease containing an acceleration clause for calculation of damages was properly granted where the landlord had also confessed judgment for possession of the leased premises:

> This case was rightly decided in the court below. It is ruled by *Grakelow v. Kidder,* 95 Pa.Super. 250. We there decided that where a landlord elects to terminate a lease and recover possession by writ of *habere facias,* following confession of judgment in an amicable action of ejectment, *he cannot also enter judgment against the tenant for the rent*

*for the balance of the term which accrued after the judgment in ejectment, but became sooner payable under an acceleration clause in the lease for default in payment of prior installments of rent.* He cannot forfeit the lease, for default by the tenant, and recover possession, on the allegation that the lease is then and there ended, and at the same time enter judgment against the tenant for the rent accruing after the eviction as if the lease were in full force and effect to the end of the term. He cannot *eject* the tenant and yet hold him responsible for rent accruing under the lease after the tenant has been evicted. This ruling is in accord with earlier decisions of this court, (*Pusey v. Sipps,* 56 Pa.Super. 121; *Hochman v. Kuebler,* 53 Pa.Super. 481); and of the Supreme Court, (*Stevenson v. Dersam,* 275 Pa. 412 [119 A. 491] ). The landlord may cumulate remedies provided in the lease (*Purvis v. Dempsey,* 238 Pa. 173 [85 A. 1091]; *Murphy v. Marshell,* 179 Pa. 516 [36 A. 294] ), but he may not avail himself of double remedies insofar as they are conflicting or antagonistic. He can eject the tenant and at the same time enter judgment for the rent accrued when the tenant was evicted; *Murphy v. Marshell, supra;* but he cannot recover both the possession and the rent for the balance of the term: *Grakelow v. Kidder, supra,* p. 256. If the defendant had abandoned the premises a month or two previous, as is urged upon us by the appellant in this case, and the latter desired to hold it responsible for the rent accruing to the end of the term, she should not have declared the lease forfeited and terminated the tenant's right of possession by judgment in ejectment and eviction under *habere facias,* but could have resumed possession in the interest of the tenant for the protection of the property, as pointed out in *Hochman v. Kuebler, supra; Auer v. Penn,* 99 Pa. 370; *Ralph v. Deiley,* 293 Pa. 90 [141 A. 640], and kindred cases; but any rent received by her thereafter on a re-letting would have been in relief of her claim against the tenant and for its benefit. The distinction must always be made "between possession of vacated premises taken by the landlord merely to protect the property or minimize the damages that would follow the tenant's abandonment, and a

possession which would be adverse to any resumption of occupation by the tenant and thus amount to an eviction": *Hochman v. Kuebler, supra,* at 53 Pa.Super. 487.

*Greco v. Woodlawn Furniture Co., supra,* 99 Pa.Super. at 291–293 (emphasis supplied).

Six years later, this Court reiterated the principle that a landlord

> can confess a judgment for future rent accruing under the acceleration clause, or a judgment in ejectment, *but not both.* Under the election he has made in this case, he can collect only the rent of $60 for the month of February, 1935.

*Matovich v. Gradich,* 123 Pa.Super. 355, 363, 187 A. 65, 69 (1936) (emphasis supplied).

Similarly, in *Grakelow v. Kidder,* 95 Pa.Super. 250 (1929), and *Pierce v. Hoffstot,* 211 Pa.Super. 380, 236 A.2d 828 (1967), this Court held that a landlord may not confess judgment for possession *and* confess judgment under an acceleration clause for all future rents which would have become due between the default and the end of the rental term. In *Grakelow, supra,* the Court explained:

> Clearly, it would be unjust to permit the lessor to eject the lessee under the eighth clause and confess a judgment for future rent under the acceleration clause, if the apartment was rented to another tenant during all or any part of the eleven months in question. He cannot have both the possession and the rent of the apartment at the same time. Under all the circumstances we are satisfied that the money judgment was irregular and invalid and that the court below was justified in striking it off.

*Grakelow, supra,* 95 Pa.Super. at 256.

The principle for which these cases stand is not complex—a landlord must elect whether to confess judgment for possession and for all monies then due, or to confess judgment for all monies due for the entire term. When the judgment is entered for possession, the landlord is, of course, entitled to recover, as damages in a civil action, those losses which he

suffers in attempting to relet the premises for the term of the lease. The lease in the instant case sets forth the proper calculation of those damages at Paragraph 26.1(B)(1). The landlord, however, cannot, as it did in the instant case, enter judgment for possession and for all moneys which would otherwise be due as rents through the end of the term.

Where a judgment is entered for items "clearly [authorized by] the judgment note, but excessive in amount, the court will modify the judgment and cause a proper judgment to be entered. If the judgment was entered for an amount which was grossly excessive, the judgment must be stricken in its entirety". *Dollar Bank v. Northwood Cheese Co.*, 431 Pa.Super. 541, 552, 637 A.2d 309, 314 (1994). *Accord: Roche v. Rankin*, 406 Pa. 92, 97–99, 176 A.2d 668, 672 (1962); *Housing Mortgage Corp. v. Tower Development and Investment Corp.*, 402 Pa. 388, 389–390, 167 A.2d 146, 147 (1961).

The money judgment entered in the instant case was excessive as containing amounts allegedly due for "other charges" in the amount of $2538.35 which appellee admitted it had received. This error should have been corrected by the court in response to the petition to open. The judgment, however, also contained $234,900.00 in accelerated rental payments for the period of August of 1992 through March 31, 1999. The money judgment was, therefore, "entered for an amount which was grossly excessive", in light of the entry of the judgment for possession, and is subject to a motion to strike. Appellant, however, did not file a motion to strike and, thus, has waived his right to this relief. *See:* Pa.R.Civ.P. 2959. The judgment should, however, have been opened, in response to the petition to open filed by appellant, so as to resolve the issue of the *amount* of the money judgment, where appellee had also confessed judgment for possession, even if the trial court believed that there was not sufficient evidence of a breach of the lease by appellee to warrant submission of that issue to a jury.

Orders reversed. Case remanded. Jurisdiction relinquished.