Filed:  September 11, 1997

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 97-1225
(CA-96-2177-CCB, et al)

Geonex Corporation, et al,

Plaintiffs - Appellants,

versus

Norritech,

Defendant - Appellee.

O R D E R

The Court amends its opinion filed August 19, 1997, as follows:

On page 2, section 1 -- the attorney information is deleted and is replaced with the following:

> **ARGUED:** Timothy P. Branigan, PIPER & MARBURY, L.L. P., Washington, D.C., for Appellants.  John J. Porter, MCCLURE & WATKINS, P.C., Pittsburgh, Pennsylvania, for Appellee.  **ON BRIEF:** Nathan B. Feinstein, PIPER & MARBURY, L.L.P., Washington, D.C., for Appellants. Richard M. Goldberg, SHAPIRO & OLANDER, P.C., Baltimore, Maryland, for Appellee.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: GEONEX CORPORATION;
VERNON GRAPHICS, INCORPORATED,
Debtors.

GEONEX CORPORATION; VERNON
GRAPHICS, INCORPORATED,
Plaintiffs-Appellants,

v.                                                        No. 97-1225

NORRITECH,
Defendant-Appellee,

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS; CHAPTER 11 TRUSTEE;
UNITED STATES TRUSTEE,
Parties in Interest.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-96-2177-CCB, BK-95-51372-JS, BK-95-51368-JS)

Argued: July 8, 1997

Decided: August 19, 1997

Before HAMILTON and LUTTIG, Circuit Judges, and
G. Ross ANDERSON, Jr., United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Timothy P. Branigan, PIPER & MARBURY, L.L. P., Washington, D.C., for Appellants. John J. Porter, MCCLURE & WATKINS, P.C., Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** Nathan B. Feinstein, PIPER & MARBURY, L.L.P., Washington, D.C., for Appellants. Richard M. Goldberg, SHAPIRO & OLANDER, P.C., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellants Vernon Graphics (Vernon) and Geonex Corporation (Geonex) appeal the district court's decision that appellee Norritech is entitled to assert an administrative claim for post-petition rent under 11 U.S.C. § 365(d)(3) because the lease between Geonex and Norritech was not terminated prior to the filing of Geonex and Vernon's bankruptcy petition. We affirm.

On August 3, 1987, Vernon signed a five year lease with Norritech for an office building located near Philadelphia, Pennsylvania. The lease provided, in part:

> LESSEE AGREES:
>
> (i) That . . . if the Leased Premises shall be deserted or vacated for a period of ten (10) days, the entire amount of the rent then remaining unpaid under this Lease and any damages due to Lessee's default or desertion or vacation shall, at Lessor's option become due and payable, or, at Lessor's option, this Lease may be forthwith forfeited and ter-

2

> minated and Lessor may enter and take possession of the Leased Premises, in which event Lessor may relet the Leased Premises to such tenants as Lessor may deem suitable, and Lessee agrees to indemnify Lessor for any loss occurring by reason thereof.

In January of 1990, Geonex acquired the stock of Vernon. By agreement, the lease term was extended through January 31, 1998.

Vernon and Geonex stopped making rent payments in June of 1993. On September 29, 1993, Norritech filed a civil suit against appellants in the United States District Court in the Western District of Pennsylvania, alleging breach of lease and breach of contract and seeking accumulated rent due and owing as of the time of suit. The day after the suit was filed, Geonex and Vernon vacated the leased premises and returned the keys to Norritech.

On March 22, 1994, approximately nine months after appellants' last rent payment, Norritech entered into an exclusive sale and lease agreement with Jackson-Cross Company. The agreement granted Jackson-Cross the exclusive right to list for sale or lease the premises at issue in this case. Norritech signed a standard contract which included language indicating that the offer to sell or lease was "for the Owner's account." The premises have not yet been leased or sold. Norritech never advised Geonex or Vernon that it was seeking to lease the premises on their account to mitigate damages under the lease while still holding them responsible for rent.

The district court granted Norritech's motion for partial summary judgment in the civil trial on November 14, 1994, holding that Geonex and Vernon were liable on their lease obligations. Thereafter, the parties entered into a settlement agreement and, as a result, the court dismissed Norritech's suit on December 5, 1994. On February 27, 1995 -- one day before the scheduled performance of the settlement agreement -- Geonex and Vernon filed a petition for Chapter 11 bankruptcy. The settlement agreement was therefore never performed and was vacated by its terms. Geonex and Vernon submitted a Schedule G in their bankruptcy proceedings listing unexpired leases for purposes of § 365(d)(3), and included the Norritech lease on the

3

list. Geonex and Vernon requested an extension through June 30, 1995, of the period in which they could assume or reject all unexpired leases, including the Norritech-Geonex lease. The bankruptcy court granted this extension. Geonex and Vernon never amended their Schedule G list of unexpired leases. Nevertheless, on June 29, 1995, in a subsequent motion for another extension of time in which to accept or reject unexpired leases, the bankruptcy trustee stated that the Norritech-Geonex lease had expired pre-petition and that he was not requesting an extension on that lease. The trustee rejected the lease on June 29, 1995.

In the course of the bankruptcy proceedings, Norritech filed an unsecured, priority claim for post-petition administrative rent under § 365(d)(3). Geonex and Vernon filed objections to Norritech's claim, and the bankruptcy court sustained the objections, holding that the lease between Geonex and Norritech had terminated prior to the filing of the bankruptcy petition, and thus that Norritech had no claim for post-petition administrative rent. The federal district court for the District of Maryland, sitting as an appellate bankruptcy court, reversed.

We hold that the district court properly reversed the bankruptcy court's judgment that the Geonex-Norritech lease terminated prior to the filing of the bankruptcy petition.[1] Geonex argues that, under the lease, Norritech had only two options if Geonex breached their contract: either Norritech could accelerate the rental payments or Norritech could terminate the lease, take possession, and relet the premises. Thus, Geonex contends that the contract precludes Norritech from availing itself of the remedy that would normally be available to it

———————————————————————————————

[1] Although Geonex claims that whether the lease terminated pre-petition is a question of fact and that the district court thus should have deferred to the bankruptcy court's finding unless it was "clearly erroneous," the material facts in this case are undisputed; the question is what inferences the bankruptcy court was legally entitled to draw from the undisputed facts. Cf. Ralph v. Deiley, 151 A. 640, 642 (Pa. 1928) (noting that the question whether a surrender of a lease has been accepted, such that a lease is terminated, "is usually a question of fact for the jury, but the evidence may be such as to make it one of law for the courts") (citation omitted).

4

under common law: refusing to accept Geonex's surrender of the lease, holding Geonex to its contractual obligation to pay rent, and -- nonetheless -- taking possession of the premises and attempting to mitigate damages. We do not read the lease so restrictively. Paragraph (i) of the lease, which enumerates the options Geonex describes, does not purport to create Norritech's exclusive remedies for breach; it appears merely to confer additional remedies on Norritech, rather than restricting those to which Norritech was already entitled under common law. Moreover, the lease provision in question is located in the section of the lease designated "Lessee agrees," rather than "Lessor agrees" or "Lessor and Lessee agree," and therefore presumably creates rights of the lessor, as against the lessee, rather than limiting the preexisting rights of the lessor.

Norritech was therefore entitled to exercise its common law right to refuse Geonex's surrender of the lease, hold Geonex to its duty to pay rent, and attempt to mitigate damages. Geonex contends, however, that Norritech did not intend to exercise this option, but instead -- by attempting to relet or sell the premises-- demonstrated its intent to accept Geonex's surrender. Pennsylvania law governs the resolution of this dispute.

Under Pennsylvania law, leases may not be terminated by the unilateral act of one party. See Ralph v. Deiley, 141 A. 640, 642 (Pa. 1928). In the absence of an express agreement, the lessee alleging that the lessor accepted surrender of a lease must prove that the lessor engaged in "unequivocal act[s]" that clearly demonstrate its intent to accept surrender. Id. The Pennsylvania Supreme Court has held that an attempt to relet or even actual reletting (within the term of the original lease) is not so inconsistent with the original landlord-tenant relationship that it demonstrates acceptance of surrender. See id. at 642-43. Thus, Norritech's attempt to relet the premises cannot, as a matter of law, be treated as acceptance of Geonex's surrender.

Nor is the fact that Norritech also listed the property for sale sufficient evidence to prove that Norritech intended to accept Geonex's surrender. The parties have not cited any Pennsylvania case which directly considers whether a lessor's sale -- or listing for sale -- of the leased premises can be treated as acceptance of the lessee's sur-

5

render. However, the Pennsylvania Supreme Court's reasoning in Ralph and Jenkins v. Root, 112 A. 153 (Pa. 1920), satisfies us that the Pennsylvania Supreme Court would not find that a mere offer to sell the premises was so inconsistent with the original lease that it constituted acceptance of surrender as a matter of law. Listing property for sale does not create any estate that competes with, or is otherwise inconsistent with, the original lease. Cf. id. at 154 (noting that "the creation of an inconsistent estate" would be evidence that surrender was accepted). Moreover, the listing of premises for sale is not inherently "hostile" to a resumption of the original landlord-tenant relationship. Indeed, even if Norritech had consummated a sale, it might have sold the property subject to the original lease. Cf. Ralph, 141 A. at 642 (noting that the creation of an estate -- in Ralph, a second lease -- evidences acceptance of surrender only when the terms of the second estate "could not be enforced under the terms of the first lease"); see also Homart Development Co. v. Sgrenci, 662 A.2d 1092, 1101 (Pa. Super. Ct. 1995) ("The distinction must always be made `between possession of vacated premises taken by the landlord merely to protect the property or minimize the damages that would follow tenant's abandonment, and a possession which would be adverse to any resumption of occupation by the tenant and thus amount to an eviction.'") (citation omitted).

Norritech's offer to relet or sell the property may properly be viewed as an attempt to mitigate damages, and an act done in mitigation of the lessee's liability neither terminates the lease nor discharges the lessee's duty to pay rent. See id. at 643. Norritech's failure to give Geonex notice that Norritech's offers to sell or lease the premises were an attempt to mitigate damages for Geonex's benefit is legally irrelevant. See id. Additionally, the fact that Geonex listed the Geonex-Norritech lease on its bankruptcy Schedule G as an unexpired lease, if not a binding admission, see Sovran Bank v. Anderson, 743 F.2d 223 (4th Cir. 1984) (holding that "[f]iling the schedule in a proceeding in bankruptcy . . . is a solemn admission which, unless corrected, binds" the debtor in the bankruptcy proceeding), is at least strong evidence that Geonex did not believe that the lease had terminated pre-petition.

6

Based on the foregoing, the district court correctly held that the Norritech-Geonex lease did not terminate prior to the filing of the bankruptcy petition.**2**

AFFIRMED

_____

**2** The district court also properly reversed the bankruptcy court's judgment that the administrative claim for post-petition rent should be disallowed because the lease did not benefit the bankruptcy estate. Conditioning the validity of an administrative claim for post-petition rent under 11 U.S.C. § 365(d)(3) on a showing that the bankruptcy estate derived benefit from the lease contravenes the plain language of the Bankruptcy Code. Generally, administrative claims-- which are given special priority in the bankruptcy proceeding -- are governed by U.S.C. § 503(b)(1), which provides that only "actual, necessary costs and expenses of preserving the estate" are entitled to administrative status. Id. This has been interpreted to mean, inter alia, that the bankruptcy estate must derive benefit from the expenditure. See In re Stewart Foods, Inc., 64 F.3d 141, 145 n.2 (4th Cir. 1995). However, the administrative claim for post-petition rent arises under a separate provision, § 365(d)(3), which specifically disclaims the applicability of the § 503(b)(1) requirements:

> The trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of non-residential property, until such lease is assumed or rejected, notwithstanding § 503(b)(1) of this title.

Id. (emphasis added). Thus, it appears from the plain language of the statute that administrative claims for post-petition rent are allowed without regard to the limitations and restrictions imposed by § 503(b)(1). We therefore refuse to graft the requirement of proof of actual benefit to the bankruptcy estate onto § 365(d)(3).

7