**Hankin v. Graphic Technology Inc.**

C.P. of Montgomery County, no. 2006-30821.

*John Fiorillo*, for plaintiff.
*Daniel R. Utain* and *David L. Black*, for defendant.

CARPENTER, *J.*, January 27, 2010—

### FACTUAL AND PROCEDURAL HISTORY

Appellant/defendant, Graphic Technology Inc. (GTI), appeals several orders issued by this court. All orders are

now final based upon our October 16, 2009 order in which we entered a final judgment in favor of appellee/ plaintiff, Mark Hankin in the amount of $184,443.88.

Hankin commenced the underlying action by filing a confession of judgment against GTI on December 13, 2006 in the amount of $184,443.88 for GTI's alleged breach of a lease agreement.

By way of background, Hankin is the owner of a commercial property located at Willow Grove Industrial Commons, 2940 Turnpike Drive, Willow Grove, Pennsylvania. On August 20, 1998, Hankin and GTI executed a lease for the premises. On November 30, 2004, GTI assigned the lease to Vestcom New Century LLC to occupy the premises and assume the lease. By letter dated April 11, 2006, Vestcom informed Hankin of its intention to terminate the lease effective October 31, 2006. However, Vestcom, occupied the premises until November 30, 2006. Because Vestcom did not vacate the premises until November, paragraph 25 of the lease allowed Hankin to either disregard the notice of termination and renew the lease for another year, or to treat the tenant as an involuntary holdover on a month-to-month lease at triple the rent. Hankin elected to renew the lease for another year term.

On December 13, 2006, Hankin filed the confessed judgment against GTI. GTI filed a petition to strike and/ or open on January 22, 2007. In addition, Hankin also filed a separate lawsuit against Vestcom in this court, at docket number 2006-30536.

While the petition to srike and/or open was pending, Hankin transferred the judgment to Kansas and obtained an order of garnishment from the District Court of John-

son County (Kansas court), attaching $184,443.88 (garnished funds). As a result of the garnishment, on July 2, 2007, GTI filed an emergency petition for stay of execution in this court. As a result of the emergency petition, on July 5, 2007, an agreed order was entered, staying all execution proceedings.

On January 8, 2008, the confessed judgment was opened. Subsequently, on March 24, 2008, GTI filed a motion to compel arbitration.

Also on March 24, 2008, while the stay was in force, GTI filed in the Kansas court a motion to strike and vacate foreign judgment and immediately release fund to defendant. The court in Kansas granted the motion to strike and vacate and entered an order directing that the garnished funds be released on May 8, 2008.

In response, Hankin filed a motion for contempt on April 11, 2008 in this court, bringing to our attention GTI's recent legal action in Kansas.

On April 30, 2008 we held a hearing on Hankin's motion for contempt, and on that date we issued an order. So as to maintain the status quo, we directed GTI to instruct or to take any such action as may be necessary for the Kansas court to transfer and/or commence transfer of the $184,443.88 to the prothonotary of this court. We deferred ruling on the issue of contempt and counsel fees. Additionally, the April 30, 2008 order contained a self-executing remedy in the event that GTI failed to comply. Specifically, it provided that if GTI. did not comply with the order on or before May 5, 2008, GTI would be sanctioned by the automatic entry of final judgment in favor of Hankin in the amount of $184,443.88.

On May 2, 2008, GTI filed a notice of appeal of this court's order and obtained a stay of the entry of judgment.

During the time these events were unfolding in this court, Hankin appealed the Kansas court's decision to release the garnished funds and expressly requested and obtained a stay of the release of the funds pending the appeal. A stay was granted until May of 2009.

On April 29, 2009, the Pennsylvania Superior Court quashed GTI's appeal of the April 30, 2008 order as interlocutory and remanded the case for further proceedings. Significantly, our Superior Court specifically directed GTI to "immediately comply" with this court's April 30, 2008 order.[1]

A day after our Superior Court filed its April 29, 2009 memorandum decision, GTI filed another motion in the Kansas court seeking to have the garnished funds immediately released directly to the company. See Hankin's motion for contempt 8/21/09, exhibit "G," GTI's 4/30/09 motion. This was another attempt by GTI to have the garnished funds directly released to the company, contrary to this court's April 30, 2008 order, the Superior Court's April 29, 2009 order, and the July 5, 2007 agreed order.

As the May 2009 expiration date of the Kansas stay was approaching, Hankin filed a motion with the Kansas

---

1. The April 29, 2009 Superior Court memorandum decision directed GTI to "immediately comply with the trial court's order dated May 2, 2008." Reading this directive in context of the entire decision shows that our Superior Court is referring to the order dated April 30, 2008, which was entered onto the docket on May 2, 2008.

court requesting an extension of the Kansas stay to prohibit the Kansas court from releasing the garnished funds. On May 1, 2009, after argument, the Kansas court granted Hankin's motion for an extension of the Kansas stay and entered an "order continuing stay of judgment pending final resolution of appeal" (Kansas stay extension order) declaring that the garnished funds would not be released in the absence of an order from the Kansas appellate court.

Back in Pennsylvania, on May 11, 2009, after the Superior Court issued its April 29, 2009 memorandum decision, GTI filed an emergency motion for reconsideration of the April 30, 2008 order, and Hankin filed a response. On June 24, 2009 we heard argument on the emergency motion. On June 30, 2009 we issued an order vacating our April 30, 2008 order. With respect to the garnished funds being held by the Kansas court, we instructed GTI to take whatever action necessary for the Kansas court to transfer the garnished funds to the Montgomery County Prothonotary, at the time they are released from the Kansas court. Additionally, we stayed this matter pending the receipt of the garnished funds to our prothonotary.

In the interim, this court held argument on GTI's motion to compel arbitration. We denied the motion on June 30, 2009. GTI appealed from our order to the Pennsylvania Superior Court, docketed at 2610 EDA 2009. That appeal is pending, and has been consolidated with this appeal.

Subsequently on August 21, 2009 Hankin filed a motion requesting the court find the defendant in contempt for violating an order of court. GTI filed a response on

September 17, 2009. On September 18, 2009 we held a hearing on the matter. After careful consideration, we issued an order on September 18, 2009, in which we directed GTI to apply to the Kansas court for the direct transfer of the garnished funds within 10 days from the date of the order. We warned that GTI's failure to comply could result in a final judgment in favor of Hankin. We held the motion for contempt in abeyance, pending compliance with the order.

On September 25, 2009, GTI filed a pleading captioned "application to the district court." On October 1, 2009, the Kansas court conducted a hearing on GTI's application. GTI's "application" was nothing more than a futile exercise designed to give the appearance of complying with the September 18, 2009 order, in an effort to avoid being held in contempt, while maintaining the funds in Kansas. We emphasize that the "application" never asked for the garnished funds to be transferred. Rather, it is a 15-paragraph pleading, in which the first 11 paragraphs set forth a brief recitation of the factual background. Paragraphs 12 and 13 advised the Kansas court that it did not have jurisdiction, and that there was an "inherent conflict between the orders of this court and the directive from the Pennsylvania court" regarding the garnished funds. In paragraph 14, GTI sought "direction" as to how it should proceed.

Thereafter, on October 7, 2009 Hankin filed a supplemental motion requesting this court to find defendant in contempt for violating an order of court (supplemental motion for contempt). On October 15, 2009, GTI filed its response. The following day, on October 16, 2009 we held a sanctions hearing. Based upon the evidence and

the arguments presented by counsel we found GTI in contempt for failing to comply with orders of this court and the order of the Pennsylvania Superior Court, GTI acted in bad faith and without clean hands and was no longer deserving of the original equitable relief granted by this court. Accordingly, we issued two orders. Having found GTI in contempt, first, we entered final judgment in favor of Hankin and against GTI, in the amount of $184,443.88. Second, we vacated our order dated January 8, 2008 granting the petition to open the confessed judgment, and then denied the petition to open.

GTI has filed this timely appeal.

## ISSUES

(I)  *Whether we properly denied GTI's petition to strike.*

(II) *Whether we properly denied GTI's motion to compel arbitration.*

(III) *Whether we properly awarded sanctions against GTI.*

(IV) *Whether full faith and credit principles are implicated.*

(V)  *Whether we properly required GTI to pay to transfer the garnished funds into this court's prothonotary.*

(VI) *Whether GTI disturbed the status quo through the Kansas court.*

(VII) *Whether GTI was deprived of its due process rights.*

(VIII) *Whether this court's October 16, 2009, order was proper.*

(IX) *Whether this court had jurisdiction to enter both October 16, 2009 orders, when an appeal is pending in the Superior Court at docket number 2610 EDA 2009.*

## DISCUSSION

### I. *We Properly Denied GTI's Petition To Strike*

On January 22, 2007, GTI filed a petition to strike and/ or open. Therein, GTI asserted numerous reasons as to why the confessed judgment should be stricken. In addition, GTI set forth several reasons why the confessed judgment should be opened. After argument was held, we denied the petition; however, after reconsideration we exercised the equitable powers of this court and opened the judgment on January 9, 2008. Now, GTI complains that we improperly denied its petition to strike, and asserts the same argument on appeal as it did in its original petition. However, there was no fatal defect appearing on the record which could allow for a striking of the judgment.

A petition to strike operates as a demurrer to the record. A demurrer admits all well-pleaded facts for the purpose of testing conclusions of law drawn from those facts. Because a petition to strike operates as a demurrer, a court may only look at the facts of record at the time the judgment was entered to decide if the record supports the judgment. A petition to strike can be granted if a fatal defect appears on the record. *Cintas Corp v. Lee's Cleaning Services Inc.,* 549 Pa. 84, 93, 700 A.2d 915, 918-19 (1997).

In contrast to a petition to strike is a petition to open, which is an appeal to the equitable powers of the court. As such, it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion. *PNC Bank v. Kerr,* 802 A.2d 634, 638 (Pa. Super. 2002). A court should open a confessed judgment if the petitioner promptly presents evidence on a petition to open, which in a jury trial would require that the issues be submitted to the jury. *Germantown Savings Bank v. Talacki,* 441 Pa. Super. 513, 520, 657 A.2d 1285, 1288-89 (1995). A petitioner must offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question. *Id.* at 520, 657 A. 2d at 1289. In determining whether sufficient evidence has been presented, we employ the same standard as in a directed verdict: view all the evidence and proper inferences therefrom supporting the defense while rejecting adverse allegations of the party obtaining the judgment. *Crum v. F.L. Shaffer Co.,* 693 A.2d 984, 986 (Pa. Super. 1997).

In this case, after reconsideration of the petition we believed that equity required this court to open the confessed judgment. On appeal, GTI only contests our decision not to strike the confessed judgment.

### a. Alleged Illegal Penalty Provision

First, GTI argues that the judgment should have been stricken because the judgment was premised upon an illegal penalty provision (paragraph 25 of the lease), which was not reasonably related to the injury allegedly caused by the one-month delay in vacating the premises, but was designed solely to punish GTI.

Paragraph 25 A of the lease in relevant part provides:

" In the event that lessee or lessor shall have given an expiration notice, and lessee shall fail to refuse to vacate completely the premises and restore the same to the condition required by this lease on or before the expiration date to which the expiration notice applied, without lessor's prior written consent, then it is expressly agreed that lessor shall have the option:

"(i) to disregard the expiration notice as having no force and effect, whereupon the expiration notice shall be null and void, ab initio, as if never given; or

"(ii) to declare the lessee to be holding over, in accordance with section 39 hereof." See complaint in confession of judgment 12/13/06, exhibit "A," lease, ¶25.

As Hankin notes in his brief in opposition to GTI's, petition to strike, GTI's argument relies on the false premise that Hankin recovered possession of the premises and the right to collect 11 months of rent. Vestcom did not surrender the premises to Hankin, as a surrender can only be accomplished by mutual consent, and it relieves the tenant from liability for further rent. *Ralph v. Deiley,* 293 Pa. 90, 141 A. 640 (1928). Rather, Vestcom voluntarily ceased to occupy the premises. This distinction is important in analyzing GTI's argument because there is no issue of double recovery.

When Vestcom did not vacate the premises by October 31, 2006, Hankin elected to disregard Vestcom's notice of termination as having no force or effect in accordance with paragraph 25, subsection (i); therefore, the lease

agreement was automatically renewed for the year. Accordingly, when Vestcom did vacate the premises November 30, 2006, in breach of the lease agreement, Hankin accelerated the rent. Consequently, Hankin confessed judgment for money, and not for possession. A confession of judgment for money allows a landlord to recover all monies due for the entire lease term. *Homart Development Co. v. Sgrenci,* 443 Pa. Super. 538, 557, 662 A.2d 1092, 1101 (1995). This is contrasted with a confession of judgment for possession, which allows the landlord to possession and limits recovery to all monies then due. *Id.*

Additionally, paragraph 25 is intended to give the landlord some degree of certainty that a tenant, who has issued a termination letter, will in fact vacate the premises on a date certain. It is reasonable for a landlord to rely upon a tenant's termination letter so a landlord can plan and take steps to secure a new tenant. This effort is hampered when a landlord does not have certainty that the tenant in possession will in fact vacate the premises. Paragraph 25 of the lease is not a penalty provision.

Finally, the lease was negotiated by two sophisticated business entities, and now GTI seeks to have this court renegotiate the terms of the lease, eliminate the option contained in paragraph 25, and require Hankin to treat GTI as a month-to-month hold-over tenant. This is not this court's province.

### b. No Double Recovery

Next, GTI argues that the judgment should have been stricken because the automatic yearly renewal provision of paragraph 25 of the lease created an impermissible

result of double recovery of possession of the leased premises and acceleration of rent for the remainder of an unexpired term, as evidenced by the entry of judgment against GTI for rent through October 31, 2007 and Hankin's collection of rent from another tenant for the use of that property during that same period.

GTI presented this argument in its motion for reconsideration requesting that the judgment be stricken or in the alternative, the judgment be opened. Specifically, GTI asserted that as of late August or beginning of September of 2007, Hankin had re-let the premises to an organization known as "Planet Aid." GTI argued that since the judgment includes accelerated rent through October 31, 2007, Hankin has recovered a double recovery, which is not allowed under Pennsylvania law, holding that a landlord may not recover possession of leased premises and collect an acceleration of rents for the remainder of an unexpired term. GTI cited and currently cites *Homart Development Co. v. Sgrenci,* 443 Pa. Super. 538, 662 A.2d 1092 (1995) for this proposition.

We found this argument convincing, and accordingly we opened the judgment on this basis. We did not strike the judgment because no fatal defect appeared on the face of the record when the confessed judgment was entered on December 13, 2006. Rather, the lease specifically authorizes Hankin to accelerate rent and to confess judgment for all rent for the unexpired balance of the term. At the time the judgment was entered on December 13, 2006, the judgment amount was arguably correct because, at that time, Hankin had not yet re-let the premises resulting in a possible double recovery. Where a petitioner claims that the judgment is invalid

for reasons beyond the record, he is seeking to open the judgment. *Scott v. 1523 Walnut Corporation,* 301 Pa. Super. 248, 251, 447 A.2d 951, 952 (1982).

### c. Condition Precedent

Third, GTI contends that the judgment should be stricken because Hankin failed to comply with a condition precedent to confessing judgment requiring Hankin to serve GTI with prior written notice of default when GTI's assignee, Vestcom, vacated the premises pursuant to paragraph 20 of the lease agreement.

In this case, plaintiff was not required to give notice prior to confessing judgment. The pertinent part of the lease agreement, paragraph 20 states:

"Notwithstanding anything in this paragraph or elsewhere contained to the contrary, lessor agrees that lessor will not exercise any right or remedy provided for in this lease or allowed by law, because of any default of the lessee, unless lessor shall first have given written notice thereof to lessee and (i) within a period of 10 days thereafter, lessee shall have failed to pay the sum or sums due if the default consists of the failure to pay money, or (ii) if said default shall consist of anything other than the failure to pay the sum or sums due hereunder, lessee shall have failed within the period of 20 days after notice from lessor to have cured said default, except that if such default cannot be cured within said 20 days, lessee shall only be in default if lessee shall have failed to begin and actively and diligently in good faith proceed with the correction of the default until it shall be fully corrected not later than 60 days after such notice; *provided further however, that no such notice from lessor shall be required*

*if lessee shall have removed from, shall manifest an intention to remove from, or shall be in the course of removing from the premises. . . ."* (emphasis added)

A plain reading of this paragraph shows that if the lessee removes itself from the premises, then notice is not required. That is what happened in this case, Vestcom removed itself from the premises on November 30, 2006—with 11 months remaining in the term of the lease.

An important point must be emphasized. Vestcom's failure to vacate the premises on or before October 31, 2006, in accordance with the letter of termination, was the predicate act that brought the election of the remedy provision of paragraph 25 into play. Under paragraph 25, Hankin elected the remedy of a one-year lease term. Accordingly, Vestcom vacated the premises during the lease term on November 30, 2006; therefore, no notice was required.

### d. Arbitration Provision

Fourth, GTI argues that the confessed judgment should have been stricken because the arbitration provision divested this court of jurisdiction to enter the judgment.

The lease agreement contains the following arbitration provision, which reads in relevant part:

"(38) Miscellaneous.

"(A)Lessor and lessee agree, at the request of either party, that any controversy or claim arising out of or relating to this agreement, or the breach thereof, *may* be submitted to final and binding arbitration by the Ameri-

can Arbitration Association, as modified herein, and judgment upon the award rendered by the arbitrator shall be entered in any court having jurisdiction thereof. The following standards shall supplement the regulations of the American Arbitration Association and shall control in the even of conflict:

"(i) The aggrieved party shall request arbitration after the dispute arises and promptly serve notice of submission to the other party;

"(a) The above notwithstanding, the lessee shall be required to request such arbitration no later than 30 days after the dispute arises and failure by lessee to make such timely request shall be deemed to be a waiver of lessee's rights, hereunder and full award shall be granted to lessor.

"(ii) Within 20 days of submission, each party shall submit a proposed award to the American Arbitration Association." See complaint, exhibit "A", lease, paragraph 38. (emphasis added)

We found the arbitration provision to be voluntary and not mandatory as evidenced by the use of the term "may" rather than "shall." Specifically the language in paragraph 38 of the lease agreement states that "lessor and lessee agree, at the request of either party, that any controversy or claim arising out of or relating to this agreement, or the breach thereof, *may* be submitted to final and binding arbitration by the American Arbitration Association . . . ." See complaint in confession of judgment, exhibit "A", lease, paragraph 38. (emphasis added) Strictly construing the arbitration provision, the parties did not clearly and unmistakably agree to arbitrate this matter. Rather, the language demonstrates that the decision to

arbitrate is voluntary and not mandatory. Additionally, in order to invoke the voluntary arbitration provision, GTI should have complied with the prerequisites set forth in subsections (i) and (ii). However, GTI clearly did not.

## II. *We Properly Denied GTI's Motion To Compel Arbitration*

GTI contends that this court erred as a matter of law or abused its discretion by refusing to enforce the arbitration provision set forth in the lease. Additionally, GTI asserts that this court erred as a matter of law or abused its discretion in failing to enter an order consistent with the final order entered in the companion case against GTI's assignee, *Hankin v. Vestcom Internation Inc.,* C.C.P. Montgomery County, Pennsylvania, no. 2006-30536, wherein a court of coordinate jurisdiction determined that the underlying dispute was within the scope of the arbitration provision, and, as a matter of law, should be dismissed in favor of arbitration. Because both of these issues are addressed in our September 9, 2009, opinion, we will not discuss them here. Attached to this supplemental opinion is our September 9, 2009 opinion. (not published herein)

## III. *We Properly Awarded Sanctions Against GTI*

Third, GTI contends that this court erred as a matter of law or abused its discretion by awarding sanctions against GTI, *i.e.,* the entry of the two orders dated October 16, 2009, without finding that GTI violated the court's order dated September 18, 2009. GTI cites *In re Contempt of Cullen,* 849 A.2d 1207, 1210 (Pa. Super.

2004) ("an order whose *specific terms* have not been violated will not serve as the basis for a finding of contempt."). (emphasis in original)

As each court is the exclusive judge of contempts against its process, the Superior Court will reverse an order of contempt only upon a showing of a plain abuse of discretion. *Diamond v. Diamond,* 792 A.2d 597, 600 (Pa. Super. 2002).

The *Cullen* court stated the law of civil contempt as follows:

"In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

"To be punished for civil contempt, a party must not only have violated a court order, but that order must have been '*definite, clear, and specific*—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct.' Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose *specific terms* have not been violated will not serve as the basis for a finding of . . . civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which . . . is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful

intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

"When holding a person in civil contempt, the court must undertake (1) a rule to show cause; (2) an answer and a hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt . . . ." *Cullen,* 849 A.2d at 1210-11.

GTI was sanctioned for ignoring the orders of this court, directing it to transfer the garnished funds to our prothonotary, for ignoring the order of the Superior Court, directing GTI to comply with our April 30, 2008 order and GTI's attempts in Kansas to have the garnished funds released directly to the company, contrary to previous orders. The latest order GTI ignored was the September 18, 2009 order which required GTI to make application to the Kansas court to have the garnished funds transferred to our prothonotary.

By way of background, on September 18, 2009, Hankin's motion for contempt was before this court. After a hearing, we entered the September 18, 2009 order which required GTI to apply to the Kansas court to secure the direct transfer of the garnished funds from Kansas to our prothonotary. Application was to have been made within 10 days. We held the motion for contempt in abeyance pending compliance with the order. GTI was warned that sanctions could be imposed for noncompliance, specifically stating that final judgment could be entered in favor of Hankin.

In the guise of complying with the September 18, 2009 order, on September 25, 2009, GTI filed a pleading captioned "application to the district court" in the Kansas

court. However, GTI's "application" was nothing more than a futile exercise designed to give the appearance of complying with the September 18, 2009 order in an effort to avoid being held in contempt, while maintaining the funds in Kansas. We emphasize that the "application" never asked for the garnished funds to be transferred. Rather, it is a 15-paragraph pleading, in which the first 11 paragraphs set forth a brief recitation of the factual background. Paragraphs 12 and 13 advised the Kansas court that it did not have jurisdiction, and that there was an "inherent conflict between the orders of this court and the directive from the Pennsylvania court" regarding the garnished funds. In paragraph 14 GTI sought "direction" as to how it should proceed. The fact that GTI entitled its motion "application" does not make it so.

It is significant that Hankin attempted to remediate the jurisdictional issue, by offering to withdraw its appeal in the Kansas appellate court, if GTI would consent to the direct transfer of the garnished funds to this court's prothonotary. See Hankin's supplemental motion for contempt, exhibit "B", proposed order. The withdrawal of the appeal would have allowed GTI to fully comply with the September 18, 2009 order. GTI never responded to Hankin's overture. Instead, GTI filed its "application," which did not request the transfer of the garnished funds.

Hankin highlighted to this court during the October 16, 2009 hearing, GTI's argument that Hankin could have unilaterally discontinued its appeal so as to allow the Kansas court to have jurisdiction, is disingenuous because such action would have left Hankin unprotected. A unilateral discontinuance of the appeal would have

meant that the garnished funds would have been released directly to GTI. (Sanction hearing 10/16/09 pp. 11-12, 17.)

It is clear to this court that GTI sought and continues to seek the transfer of the garnished funds directly to the company. GTI never intended to request or allow for the direct transfer of the garnished funds to this court.

Accordingly, we found that GTI did not in fact apply to the Kansas court for the transfer of the garnished funds, in violation of the September 18, 2009 order. GTI had notice of the specific order which it is alleged to have disobeyed, GTI's behavior was volitional and GTI acted with wrongful intent.

### IV. *Full Faith and Credit Principles Are Not Implicated*

Fourth, GTI asserts that we erred as a matter of law or abused our discretion by failing to give full faith and credit to the determination of the Kansas court, including the determination that: (a) the opened confessed judgment is not entitled to full faith and credit under Kansas law and that GTI is entitled to the return of the funds that Hankin garnished in Kansas held by the Kansas court; (b) Hankin's execution upon the confessed judgment is invalid and thus, was not a valid lien against GTI's property; (c) the Kansas court lacked jurisdiction to transfer the garnished funds to Pennsylvania, or consider any request, including a joint request, to do so, pending Hankin's appeal; and (d) GTI's "application" constituted an application to the Kansas court for the transfer of the garnished funds.

The Kansas court entered an order relinquishing the garnished funds, and our original April 30, 2008 order simply directed GTI what to do with those relinquished funds, *i.e.*, transfer them to our prothonotary. This has no bearing on the Kansas court's determination that under Kansas law, an opened confessed judgment is not entitled to full faith and credit, and that GTI is entitled to the return of the garnished funds. Also, our April 30, 2008 order has nothing to do with the fact that the Kansas court determined that Hankin did not have a valid lien against GTI's property. The April 30, 2008 order was simply trying to re-establish the status quo as it existed at the time the agreed order was entered into. There was no conflict between the Kansas court rulings and our April 30, 2008 order to transfer the funds from Kansas to Pennsylvania.

Additionally, GTI failed to make any request to the Kansas court to transfer the garnished funds to this court, even the "application" was nothing more than a exercise designed to give the appearance of complying with the September 18, 2009 order in an effort to avoid being held in contempt, while maintaining the funds in Kansas.

V. *We Properly Required GTI To Pay Transfer the Garnished Funds Into This Court's Prothonotary*

Next, GTI contends that we erred as a matter of law or abused our discretion by requiring it to pay money into the court's registry to secure an opened confessed judgment even though Hankin had no valid lien in Pennsylvania against GTI's property and/or after GTI had sought and received a stay on execution. We disagree.

After the confessed judgment was entered, but before the petition to strike and/or open was decided, Hankin

transferred the judgment to Kansas and obtained an order of garnishment from the Kansas court, attaching the $184,433.88. As a result of this garnishment, on July 2, 2007, GTI filed an emergency petition for stay of execution in this court. On July 5, 2007 an agreed order was entered. All matters were stayed pending further order of this court.

In complete disregard of the stay, on March 24, 2008, GTI filed a motion to strike and vacate in the Kansas court seeking the immediate release of the garnished funds. The Kansas court granted the motion to strike and vacate, and entered an order directing that the garnished funds be released on May 8, 2008. In response, Hankin filed a motion for contempt in this court, bringing to our attention GTI's legal action in Kansas while the stay here was in force.

After a hearing was conducted, we entered the April 30, 2008 order. So as to maintain the status quo we directed GTI to instruct or take any such action as may be necessary for the Kansas court to transfer the garnished funds to the prothonotary of this court.

At the hearing, it became clear to this court that despite the July 5, 2007 agreed order, staying all execution proceedings, GTI insisted on pursuing further legal action and disrupting the status quo by having the garnished funds released to it. Our April 30, 2008 order was necessary in maintaining the status quo as it existed at the time the July 5, 2007 agreed order was entered. Directing GTI to transfer the garnished funds to our prothonotary was imperative in maintaining the status quo. It is of note that the status quo is what GTI requested when it earlier filed its emergency petition for stay of execution in this court,

which resulted in the July 5, 2007 agreed order. The April 30, 2008 order is consistent with that which GTI initially sought—maintenance of the status quo. The April 30, 2008 order merely restored the parties to their July 5, 2007 positions.

## VI. *GTI Disturbed the Status Quo Through the Kansas Court*

Sixth, GTI argues that we erred as a matter of law or abused our discretion by finding that GTI's challenge to the validity of the transferred confessed judgment under Kansas law disturbed the status quo or was otherwise prohibited by the court's agreed order dated July 5, 2007.

The July 5, 2007 order stayed all execution proceedings so as to maintain the status quo. The agreed order could not have been any clearer. When the agreed order was signed by both parties, the garnished funds were being held by the Kansas court. It was GTI that upset the status quo when it decided to proceed with litigation in the Kansas court. This was clearly a violation of the agreed order.

## VII. *GTI Was Not Deprived of its Due Process Rights*

Seventh, GTI contends that this court erred as a matter of law or abused our discretion by awarding sanctions against it that deprived it of its due process rights. However, GTI's due process rights were protected.

The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard. *In re Contempt of Cullen,* 849 A.2d 1207, 1211 (Pa.

Super. 2004). In this case, GTI had notice of the October 16, 2009 hearing, GTI was present for the hearing and GTI offered arguments and evidence against Hankin's supplemental motion for contempt.

VIII. *This Court's October 16, 2009 Order Was Proper*

In GTI's concise statement, GTI asserts that this court erred as a matter of law or abused its discretion by entering the order dated September 18, 2009 granting Hankin's supplemental motion for sanctions. However, we did not rule upon Hankin's supplemental motion for contempt until October 16, 2009. The September 18, 2009 order was entered in regard to Hankin's motion for contempt. We believe, that GTI is actually referring to our October 16, 2009 order. Because we have already addressed the propriety of the October 16, 2009 order in issue III on page 476, we will not address it again here.

IX. *This Court Had Jurisdiction To Enter Both October 16, 2009 Orders, When an Appeal Is Pending in the Superior Court at Docket Number 2610 EDA 2009*

Finally, GTI argues that this court lacked jurisdiction to enter both October 16, 2009 orders due to the appeal pending in Superior Court at docket number 2610 EDA 2009. The appeal pending in the Superior Court at docket number 2610 EDA 2009, concerns our denial of GTI's motion to compel arbitration. That appeal was consolidated sua sponte by our Superior Court with this appeal.

The two October 16, 2009 orders were a result of the adjudication of Hankin's supplemental motion for con-

tempt. After the conclusion of a hearing on October 16, 2009 we found GTI in contempt. Additionally, we found GTI acted in bad faith and without clean hands and was no longer deserving of the original equitable relief granted by this court. Accordingly, we issued two orders on October 16, 2009. Having found GTI in contempt we entered final judgment in favor of Hankin and against GTI, in the amount of $184,443.88. Second, we vacated our order dated January 8, 2008 granting the petition to open the confessed judgment, and then denied the petition to open.

In essence what GTI is arguing is that this court did not have jurisdiction to enforce the September 18, 2009 order issued by this court, because of the appeal pending in regard to its motion to compel arbitration.

We note generally, a trial court may not proceed on a matter after an appeal has been taken. Pa.R.A.P. 1701(a). However, absent supersedeas or a stay, a court may enforce its orders upon the parties while an appeal is pending. See Pa.R.A.P. 1701(b)(2); *In re Griffin*, 456 Pa. Super. 440, 457, 690 A.2d 1192, 1200 (1997) (trial court properly imposed sanctions for violations of its orders which occurred while appeal was pending); *Tanglwood Lakes Community Association v. Laskowski,* 420 Pa. Super. 175, 178, 616 A.2d 37, 39 (1992) (trial court has authority to impose sanction to force party to comply with its order, despite pendency of appeal).

In this case, after GTI filed the appeal at docket number 2610 EDA 2009 in our Superior Court, it did not seek a stay or supersedeas. Accordingly, we had authority to enforce our previous order on GTI. Our October orders were entered for just that reason. GTI's continual re-

fusal to take such action necessary to transfer the garnished fund to our prothonotary resulted in our finding of contempt. GTI ignored multiple orders of this court in an attempt to directly get ahold of the garnished funds.

Additionally, Pa.R.A.P. 1701(b)(1) allows a court to, "[t]ake such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding." Here, we found the issues of contempt and sanctions to be ancillary to the appeal on GTI's motion to compel arbitration. Accordingly, we had jurisdiction to issue the two orders issued on October 16, 2009.

## CONCLUSION

The bottom line is that GTI had no intention of complying with the orders of this court or the order of the Pennsylvania Superior Court.

Based on the forgoing analysis, our June 30, 2009 order denying GTI's motion to compel arbitration and our two October 16, 2009 orders should be affirmed.